UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR-06-58-B-W |
| ) | |
| ANTHONY CAPAROTTA and ) | |
| RAYMOND FOGG ) | |

**ORDER ON GOVERNMENT'S MOTION FOR A PRELIMINARY
ORDER OF FORFEITURE**

The Court concludes that even after *United States v. Santos*, the term "proceeds" in 18 U.S.C. § 853 refers to gross receipts, not net profit, and enters a preliminary order of forfeiture.[1]

**I.    STATEMENT OF FACTS**

On September 7, 2006, a federal grand jury returned an indictment against Raymond Fogg and Anthony Caparotta, alleging that they engaged in a conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).[2]  *Indictment* (Docket # 1).  On June 18, 2008, a jury convicted Mr. Fogg and Mr. Caparotta of the marijuana drug trafficking conspiracy.  *Jury Verdict* (Docket # 478, 479).  The jury found that the drug quantity attributable to Mr. Fogg was equal to fifty or more kilograms of marijuana, but not one hundred or more kilograms, and the drug quantity attributable to Mr. Caparotta was equal to one hundred or more kilograms of marijuana, but not one thousand or more kilograms.  *Id.*

In addition to the criminal charges, the Indictment contained a forfeiture allegation.  The Indictment first claimed that the Defendants must forfeit "any and all property constituting or derived from any proceeds said defendants obtained directly or indirectly as a result of the violation alleged in this Indictment . . . ."  *Indictment* at 13.  Following the jury verdict on the

---

[1] *United States v. Santos*, 128 S. Ct. 2020 (2008).
[2] Mr. Fogg was also convicted of social security fraud, a violation of 42 U.S.C. § 408(a)(4).  The Government's forfeiture allegation against Mr. Fogg, however, does not include the social security fraud conviction.

criminal offenses, the jury returned a second verdict in which they found that the Government had established a sufficient nexus to find that Mr. Caparotta's 2000 Pontiac Grand Prix was proceeds, or was derived from proceeds, he had obtained, directly or indirectly, as the result of his involvement in the controlled substance offense for which he had been convicted.[3] *Jury Verdict* (Docket # 480).

The Indictment's forfeiture allegation was not limited to Mr. Caparotta's Pontiac. It also claimed a money judgment representing "the amount of the proceeds obtained as a result" of the drug trafficking offense. *Indictment* at 13. On June 30, 2008, the Government moved for a preliminary order of forfeiture from Mr. Caparotta against the Pontiac Grand Prix and for a money judgment against Mr. Caparotta in the amount of $528,000 and against Mr. Fogg in the amount of $264,000, all as alleged drug trafficking proceeds. *Government's Mot. for a Prelim. Order of Forfeiture* at 1-2 (Docket # 484). Mr. Fogg objected; Mr. Caparotta has not responded. *Def. Raymond Fogg's Opp'n to the Government's Mot. for a Prelim. Order of Forfeiture* (Docket # 485).

## II. DISCUSSION

### A. The Forfeiture Statute and the Law Before *Santos*

The Government's right to claim a forfeiture from the Defendants is grounded upon 21 U.S.C. § 853(a)(1):

---

[3] In accordance with standard practice, after the initial jury verdict, the issue of whether the Government established the requisite nexus between the drug trafficking offense and Mr. Caparotta's Pontiac was submitted to the jury. This practice is suggested by Rule 32.2, which provides that "[u]pon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." Fed. R. Crim. P. 32.2(b)(4). The Rule 32.2 advisory committee notes for the 2000 adoption seem to approve this role for the jury:

> The provision gives the defendant, in all cases where a jury has returned a guilty verdict, the option of asking that the jury be retained to hear additional evidence regarding the forfeitability of the property. The only issue for the jury in such cases would be whether the government has established the requisite nexus between the property and the offense.

Fed. R. Crim. P. 32.2, advisory committee's note to subdivision (b)(4).

2

> Any person convicted of a violation of this subchapter . . . punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law –
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation . . . .

21 U.S.C. § 853(a)(1).  Although § 853(b) defines the term "property," the statute does not define "proceeds."  Before June 2, 2008, the term "proceeds" in § 853 seemed clearly to refer to gross proceeds, not net profit.  *United States v. Keeling*, 235 F.3d 533, 537 (10th Cir. 2000) (describing the contention that "proceeds" in § 853 refers to net profit as "utterly without merit"); *United States v. McHan*, 101 F.3d 1027, 1042 (4th Cir. 1996).  Although the First Circuit had not squarely addressed the issue, it had held that case law under 18 U.S.C. § 1963 was persuasive in construing 21 U.S.C. § 853, *United States v. White*, 116 F.3d 948, 950 (1st Cir. 1997), and in *United States v. Hurley*, 63 F.3d 1, 21 (1st Cir. 1995), the First Circuit joined other circuits in concluding that § 1963's forfeiture provision encompassed the "broader definition of 'proceeds . . . .'"  *See United States v. Saccoccia*, 823 F. Supp. 994, 1003-04 (D.R.I. 1993).  In fact, *Hurley* described the question as "a rather easy call."  *Hurley*, 63 F.3d at 21.  Stringing *Hurley* with *White*, it seemed a foregone conclusion that the reference in § 853 to "proceeds" was to gross receipts, not net profit.

### 1. *United States v. Santos*

On June 2, 2008, however, the United States Supreme Court decided *United States v. Santos*, 128 S. Ct. 2020 (2008).  *Santos* addressed the federal money-laundering statute, 18 U.S.C. § 1956, a statute that, like § 853, does not define "proceeds."  Construing § 1956, the Court concluded that "proceeds" means profits, not receipts.  *Santos*, 128 S. Ct. at 2031.  The instant case asks whether *Santos* extends the restrictive definition of "proceeds" to the forfeiture provisions of 21 U.S.C. § 853.  The Court concludes it does not.

3

### a.   The *Santos* Plurality and the Stevens Concurrence

*Santos* is a plurality opinion.  In concluding that "proceeds" means "profits," Justice Scalia wrote for Justices Souter, Thomas, and Ginsburg; Justice Alito dissented, and joining him were Chief Justice Roberts, and Justices Kennedy and Breyer.[4]  The swing vote was Justice Stevens and, as his vote carried the day and as his reasoning was narrower, it is his opinion that creates the holding.  As Justice Scalia conceded, "[s]ince his vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited accordingly."  *Santos*, 128 S. Ct. at 2031.

Thus, the focus shifts to Justice Stevens' concurrence.  Noting the statute's silence on the definition of "proceeds," Justice Stevens began by saying that, in the absence of definition, Congress "delegates to federal judges the task of filling gaps in a statute."  *Id.* at 2031.  He then described § 1956 as "somewhat unique because it applies to the proceeds of a varied and lengthy list of specified unlawful activities . . . ."  *Id.*  Observing that "Congress could have provided that the term 'proceeds' shall have one meaning when referring to some specified unlawful activities and a different meaning when referring to others" and agreeing that "the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales," Justice Stevens balked at defining "proceeds" to refer to gross receipts when addressing the specific subcategory of money laundering activities that the defendants in *Santos* were charged with violating:  the operation of "an unlicensed stand-alone gambling venture."  *Id.* at 2031-32.  To apply the "gross receipts" definition of "proceeds" to such an operation, Justice Stevens wrote, would lead to consequences "so perverse" that he could not believe "they were

---

[4] Justice Breyer also wrote a separate dissent.  *Santos*, 128 S. Ct. at 2034-35.

contemplated by Congress," particularly since there was no legislative history to indicate otherwise. *Id.* at 2032.

At this point, Justice Stevens turned to the "merger problem." Due to a peculiarity in the way § 1956 works, the crime of operating an illegal gambling business could be merged into a the crime of operating money laundering operation and the person, though clearly guilty of the less serious crime of operating an illegal gambling shop, could be charged and convicted of the much more serious crime of money laundering.[5] If "proceeds" under § 1956 includes the expenses of the gambling operation, such as payouts, Justice Stevens was concerned that the practical effect would be "tantamount to double jeopardy . . . ." *Id.* at 2033. Justice Stevens concluded that the "revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." *Id*. He rested this conclusion on an absence of legislative history speaking to the definition of "proceeds" when operating an illegal gambling business, the perverse result that would obtain if "proceeds" meant gross receipts, and finally, the "rule of lenity may weigh in the determination." *Id.*

### b. *Stare Decisis*

In *Santos*, Justice Scalia and Justice Stevens engage in an interchange about the *stare decisis* impact of the opinion. Justice Scalia characterizes the holding to say that "the narrowness of [Justice Stevens'] ground consists of finding that 'proceeds' means 'profits' when there is no legislative history to the contrary. That is all our judgment holds. It does not hold that the outcome is different when contrary legislative history does exist." *Id*. at 2031.

---

[5] As described in *Santos*, illegal gambling carries a statutory maximum of five years, 18 U.S.C. § 1955(a), but engaging in money laundering carries an additional twenty years in prison. 18 U.S.C. § 1956(a)(1). *Santos*, 128 S. Ct. at 2026. The Sentencing Guidelines also treat money laundering much more harshly than illegal gambling. *Id.* at 2033 n.6.

> Justice Stevens disagrees with this characterization. He clarifies that his conclusion:
>
> > [R]ests on my conviction that Congress could not have intended the perverse result that the dissent's rule would produce if its definition of "proceeds" were applied to the operation of an unlicensed gambling business. In other applications of the statute not involving such a perverse result, I would presume that the legislative history summarized by Justice Alito reflects the intent of the enacting Congress.

*Id.* at 2034 n.7. Justice Alito's summary, as Justice Stevens wrote, "makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." *Id.* at 2032.

### 2. The Forfeiture Statute and the Law After *Santos*

The Court concludes that construing "proceeds" under 21 U.S.C. § 853 to refer to gross receipts remains a "rather easy call" even after *Santos*. First, unlike § 1956, there is a suggestion in § 853 that "proceeds" means something different than "profits." Section 853(a) reads in part:

> In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

21 U.S.C. § 853(a). If "proceeds" means "profits," using two terms to describe the same thing in the same sentence would be redundant and would violate the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *United States v. Cortes-Claudio*, 312 F.3d 17, 21 (1st Cir. 2002) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (internal quotation marks omitted). Unlike § 1956, by applying standard tools of statutory construction, § 853 is not silent as to the meaning of "proceeds."

6

Second, to apply the forfeiture provisions of § 853 to drug traffickers does not work a perverse result. There is no merger problem.[6] To become subject to a forfeiture under § 853, a defendant has to be convicted of a predicate crime under Title 21 and, upon such as conviction, § 853 simply assures that a drug dealer is deprived of the economic power generated by illegally derived wealth.

Third, this is manifestly the result Congress intended. Congress substantially amended § 853 along with other forfeiture provisions as part of the Comprehensive Crime Control Act of 1984 to enhance the effectiveness of then existing forfeiture statutes under both the Organized Crime Control Act, which was aimed at "racketeer influenced and corrupt organizations" (RICO), and the Drug Control Act. *See United States v. Nichols*, 841 F.2d 1485, 1486-89 (10th Cir. 1988) (containing a detailed description of the legislative history leading to the enactment of the current forfeiture provisions). The legislative history leaves no doubt that Congress intended to impose the sanction of criminal forfeiture against drug traffickers in order to "strip these offenders and organizations of their economic power."[7] S. Rep. No. 98-225, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3374; *see United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000).

The legislative history even explicitly confirms that by the use of the term "proceeds" in the forfeiture provisions, Congress intended to capture gross receipts, not net profits. To arrive at this conclusion, it is first necessary to review the legislative history for the forfeiture

---

[6] A defendant convicted of drug trafficking might also be convicted of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), since the manufacture, importation, sale, or distribution of a controlled substance is a "specified unlawful activity" under § 1956(c)(7)(B)(i). But, as opposed to the merger of illegal gambling with money laundering, Congress unarguably intended to separately criminalize and punish money laundering when done in conjunction with drug trafficking and the punishments for the individual offenses are relatively congruent. To separately punish an offender for laundering his drug trafficking receipts does not raise the specter of Justice Stevens' concern about a perverse result.

[7] In addition, under the subheading "Construction," the statute reads: "The provisions of this section shall be liberally construed to effectuate its remedial purposes." 21 U.S.C. § 853(o).

7

provisions under RICO, which were enacted at the same time.[8]  Congress explained that it used the term "proceeds" in the RICO forfeiture statute, 18 U.S.C. § 1963(a)(3), "in lieu of the term 'profits' in order to alleviate the unreasonable burden on the government of proving net profits. It should not be necessary for the prosecutor to prove what the defendant's overhead expenses were."  S. Rep. No. 98-225, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3382.  Later in the same report, Congress addressed why it used the term "proceeds" in § 853:  "The reasons for using the term 'proceeds' to define this type of property were discussed supra in the context of the amendments to the RICO criminal forfeiture provisions."  *Id.* at 3394.  Under either Justice Scalia's or Justice Stevens' view of the *stare decisis* impact of *Santos*, the congressional intent to use "proceeds" in § 853 to capture gross receipts, not just net profit, is unequivocal.

Finally, this interpretation is consistent with the strong implication of First Circuit authority before *Santos.  White*, 116 F.3d at 950; *Hurley*, 63 F.3d at 21.

Based on an analysis of the language of § 853, the absence of a perverse result, the clear expression of congressional intent, and consistent with existing First Circuit precedent, the Court concludes that the term "proceeds" in 18 U.S.C. § 853 means gross receipts, not net profit.

## III. CONCLUSION

The Court GRANTS the Government's Motion for A Preliminary Order of Forfeiture (Docket # 484) for (1) a personal money judgment against Defendant Raymond Fogg in the total amount of $264,000.00, (2) a personal money judgment against Defendant Anthony Caparotta in the total amount of $528,000.00, reflecting the amount of proceeds respectively each Defendant obtained as a result of the offense alleged in Count Two for which each Defendant has been

---

[8] Using the legislative history for the RICO forfeiture provisions is consistent with the First Circuit's earlier conclusion that the RICO forfeiture and drug-related forfeiture statutes should be construed "in *pari passu.*"  *White*, 116 F.3d at 950.

convicted, and (3) a preliminary order of forfeiture against a 2000 Pontiac Grand Prix bearing vehicle identification number 1G2WP52K0YF348203.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that pursuant to 21 U.S.C. § 853 Defendant Raymond Fogg shall forfeit to the United States the sum of $264,000.00 and Defendant Anthony Caparotta shall forfeit to the United States the sum of $528,000.00.

### A. The Money Judgments

The United States District Court shall retain jurisdiction in the case for the purpose of enforcing the Order. Pursuant to Rule 32.2(b)(3), this Preliminary Order of Forfeiture shall become final to the each Defendant at the time of his sentencing or before sentencing if the Defendant consents, and shall be made part of the sentence and included in the judgment. If no third party files a timely claim, the Order shall become the Final Order of Forfeiture, as provided by Federal Rule of Criminal Procedure 32.2(c)(2).

### B. The 2000 Pontiac Grand Prix

Regarding the 2000 Pontiac Grand Prix bearing vehicle identification number 1G2WP52K0YF348203 (motor vehicle), the jury has returned a special verdict finding that the United States has established the requisite nexus between the motor vehicle and the offense and therefore it is subject to forfeiture.

Upon entry of this Order, the United States is authorized to seize the motor vehicle, whether held by Defendant Anthony Caparotta or a third party, and to conduct discovery proper in identifying, locating, or disposing of the motor vehicle in accordance with Federal Rule of Criminal Procedure 32.2(b)(3).

Upon entry of this Order, the United States is authorized to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this

Order. The United States shall publish notice of the applicable part of this Order and its intent to dispose of the motor vehicle in such manner as the Attorney General may direct. The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in the motor vehicle.

Any person, other than Anthony Caparotta, asserting a legal interest in the motor vehicle may, within thirty (30) days of the final publication of notice, or receipt of notice, whichever is earlier, petition the Court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the motor vehicle, and for an amendment of the order of forfeiture pursuant to 21 U.S.C. § 853(n) and 18 U.S.C. § 982(b)(1).

If, by any act or omission of Anthony Caparotta, the motor vehicle so described cannot be located upon exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, or has been substantially diminished in value, then Anthony Caparotta shall forfeit substitute property, up to the value of forfeited motor vehicle.

Pursuant to Rule 32.2(b)(3), this Preliminary Order of Forfeiture shall become final as to Anthony Caparotta at the time of sentencing or before sentencing if he consents, and shall be made part of the sentence and included in the judgment. If no third party files a timely claim, this Order shall become a Final Order of Forfeiture, as provided by Federal Rule of Criminal Procedure 32.2(c)(2).

Any petition filed by a third party asserting an interest in the motor vehicle shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of petitioner's right, title, or interest in the motor vehicle, and any additional facts supporting the petitioner's claim and the relief sought.

After disposition of any motion filed under Federal Rule of Criminal Procedure 32.2(c)(1)(A) and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues.

The United States shall have clear title to the motor vehicle following the Court's disposition of all third party interests or, if none, following expiration of the period provided in 21 U.S.C. § 853(n)(2) for the filing of third party claims.

The Court shall retain jurisdiction to enforce this Order and to amend it as necessary, pursuant to Federal Rule of Criminal Procedure 32.2(e).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of July, 2008